FILED

FEB - 9 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>ANTONIO MENDONCA and<br>MARIA MENDONCA,<br><br>         Debtors.<br>_____<br><br>MICHAEL McGRANAHAN<br>as trustee,<br><br>         Plaintiff,<br><br>v.<br><br>A.L. GILBERT CO.,<br><br>         Defendant.<br>_____ | Case No. 05-91456-D-7<br><br><br><br><br><br><br>Adv. Pro. No. 06-9018-D<br><br><br><br><br><br><br><br><br><br>Date: January 29, 2007<br>Time: 10:30 a.m.<br>Dept: D |

**MEMORANDUM DECISION**

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

The parties to this adversary proceeding have filed an Agreed Statement of Facts and have briefed the legal issues. The court has heard the parties' arguments at the date and time indicated above, and the matter was submitted. For the reasons set forth below, judgment will be entered in favor of defendant A.L. Gilbert Company ("the Defendant").

I. BACKGROUND

The record in the above-captioned bankruptcy case indicates that on July 15, 2005, Antonio and Maria Mendonca, doing business as Antonio Maria Mendonca Dairy (collectively, the "Debtors"),

filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code. Michael McGranahan (the "Trustee") was appointed and continues to serve as the trustee for the Debtors' chapter 7 case.

The Debtors' schedules indicate that before they filed their chapter 7 petition, they owned dairy cattle and operated a dairy. As noted below, during the course of the case the Trustee has collected proceeds from the sale of milk products that had been produced by the Debtors' dairy.

On May 11, 2006, the Trustee initiated the above-captioned adversary proceeding against the Defendant. The Defendant answered the Trustee's complaint on June 8, 2006.

In his Complaint, the Trustee seeks under 11 U.S.C. § 544(a) to avoid a statutory lien in favor of the Defendant, on the grounds that such lien was unperfected as of the date the Debtors filed their bankruptcy petition. On the same grounds, he also seeks to avoid this lien pursuant to 11 U.S.C. § 545(2).

This court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O), in which the court may make its own findings of fact and conclusions of law. This memorandum decision constitutes the court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as incorporated by Federal Rule of Bankruptcy Procedure 7052.

## II. FACTS

On January 19, 2007, the parties filed an Agreed Statement of Facts. The following material facts agreed by the parties are hereby adopted by the court:

1.   As of the commencement of the Debtors' case, they owed the Defendant the sum of $85,425.19 for providing feed and materials to the Debtors for use in their dairy operation, as evidenced by the Defendant's proof of claim filed September 6, 2005 (Clerk's Claim No. 8).

2.   The Defendant supplied feed and materials to the Debtors during the forty-five day period before the Debtors' bankruptcy petition was filed, in the total amount of $25,972.95.

3.   The available funds from the pre-petition and post-petition sale of the Debtors' milk products, which the Trustee has collected and which are subject to the Defendant's lien claim, total $25,549.88.

4.   The Defendant filed certain UCC-1 financing statements with the California Secretary of State's office as follows: (a) Doc. No. 0415360111 on May 19, 2004, and (b) Doc. No. 0417560935 on June 16, 2004 (collectively, the "Statements"); both of the Statements state that the Defendant is entitled to a statutory Dairy Supply lien in the Debtors' milk products and proceeds therefrom.

The parties further agreed, and the court finds, that the Statements include, in Section 3, the Defendant's corporate name, but that the name is typewritten rather than hand-signed by a representative of the Defendant.

In their respective trial briefs, the parties concur that should the Statements be materially defective under applicable law, the Defendant's lien would be unperfected and therefore subject to avoidance under both actions stated by the Trustee in his Complaint. The Trustee argues that the Defendant's failure

in the Statements to provide hand-written signatures of a representative of the Defendant is just such a defect. The Defendant argues that the Statements are sufficient under applicable law and therefore insulate its claimed lien from attack by the Trustee based on a lack of perfection.

### III. ANALYSIS

In 1987, the California legislature added chapter 11, known as the Diary Cattle Supply Lien law ("Lien Law"), to the Food and Agricultural Code.[1] 1987 Cal. Stats. ch. 679. The Lien Law provides for a statutory lien, known as a Dairy Cattle Supply Lien ("Dairy Lien"), in favor of those who provide feed or materials to aid in the raising or maintaining of diary cattle. Cal. Food & Ag. Code § 57402 (West 2001). The amount that can be secured by a Diary Lien is limited to "an amount equal to the reasonable or agreed charges for feed or material provided within a 45-day period." Id.

The Lien Law creates a specific scheme for the creation and perfection of Diary Liens. A lien created under the Lien Law "shall be perfected and shall be effective upon the filing of a notice of claim of lien with the Secretary of State pursuant to all provisions of this section." Id. § 57405. The Lien Law provides a list of specific requirements for the form and filing of the notice of claim of lien. One such requirement is that the notice "shall be signed by the lien claimant or by a person authorized to sign documents of a similar kind on behalf of the claimant." Id. § 57405(c). The Lien Law also provides that the

---

1. Chapter 11 is codified in the California Food & Agricultural Code at §§ 57401 - 57414.

Case 06-09018    Filed 02/09/07    Doc 27

notice must be filed on the standard financing statement form under the Commercial Code, but with three specific changes to be made to such form.  Id. § 57405(d).  One such change in the form of financing statement is that "[t]he form shall be signed by the lien claimant and need not be signed by the debtor."  Id. § 57405(d)(2).

In addition to these specific requirements, the Lien Law provides more generally that "except to the extent specifically set forth in this chapter, the lien created by this chapter shall be subject to Division 9 . . . of the Commercial Code."  Id. § 57407.

The Trustee argues that the typewritten name of the Defendant is a material defect in the Statements, which makes them insufficient to perfect the Defendant's claim of lien under the Lien Law, because the typewritten name on the Statements is not a signing as contemplated by the statute.  The Trustee further argues that the plain meaning of the Lien Law requires hand-written signatures on the Statements.  At oral argument, the Trustee's counsel also argued that the Lien Law, because it provides for a statutory rather than consensual lien, must be construed to require written signatures, to minimize the potential risk for fraudulent lien claims.

The Defendant argues that § 57407 of the Food and Agricultural Code effectively eliminates the requirement for any signature on the Statements, because it operates to impose the formal requirements of the Commercial Code for the form of notices of lien under the Lien Law and the Commercial Code does not require a debtor's or secured party's signature to be

provided thereon.  Alternatively, the Defendant argues that even if a signature is required to perfect its Diary Lien, the typewritten name appearing on the Statements satisfies applicable law.

The Lien Law does not expressly define how a notice of lien is to be "signed."  The issue, then, in light of the lack of a statutory definition, is whether the Defendant's typewritten name on the Statements is to be considered a "signing" (i.e. its "signature").

"The starting point for interpreting a statute is the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).  The Supreme Court has instructed that the "plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters'." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) (citations omitted). Where "plain meaning" yields results that are not absurd, the inquiry ends there, without need to probe legislative history. See Lamie v. U.S. Trustee, 540 U.S. 526, 534-36 (2004) ("awkward, and ungrammatical" language in 11 U.S.C. § 327 not ambiguous, and plain meaning of words applied).

Here, for two reasons, the statutory language dictates that the Defendant's typewritten name on each of the Statements was sufficient to perfect the Defendant's lien.  First, the plain meaning of "to sign" includes acts other than the hand-writing of a name.  To sign means "to affix a signature to" or "to approve or ratify (a document) by affixing a signature or seal."

Webster's II Collegiate Dictionary 1051 (3d. ed. 2005). A "signature" is a "distinctive mark, characteristic, modus operandi, or sound effect indicating identity" as well as "the name of one as written by oneself." Id. A prominent law dictionary defines "signature" in the commercial context as "[a]ny name, mark, or writing used with the intention of authenticating a document." Black's Law Dictionary (8th ed. 2004). Based on these common meanings of "to sign" and "signature," the court concludes that the typewritten name of Defendant on the Statements satisfied the Lien Law's requirement that they be "signed" by the Defendant.

Second, the Lien Law provides that Diary Liens are "subject to Division 9" of the Commercial Code, to the extent not "specifically set forth" in the Lien Law. Cal. Food & Ag. Code § 57407 (West 2001). A definition of "to sign," an act required by § 57405(d), is not "specifically set forth" in the Lien Law. The court therefore can look to Division 9 of the Commercial Code for the definitions of these terms.

Before July 1, 2001 (the effective date of comprehensive changes to Division 9), § 9402(1) of the Commercial Code expressly required the debtor's signature on a financing statement. In various cases, courts did not construe this requirement to mean that a corporate debtor must provide a handwritten signature of a corporate officer on financing statements. See In re Sport Shack, 383 F. Supp. 37, 41 (N.D. Cal. 1974) (hand-written name of corporate debtor sufficient and signature of corporate officer not required); In re Save-On Carpets of Ariz., Inc., 545 F.2d 1239, 1240-41 (9th Cir. 1976)

Case 06-09018    Filed 02/09/07    Doc 27

(typed name of corporate debtor sufficient under Arizona version of U.C.C. § 9-402(1)).

Although the Defendant invites the court to read the signature requirement out of the Lien Law altogether, the court cannot do so here in light of the language in § 57405(d)(2) requiring, as a specific change to the form of the financing statement, that the form "be signed by the lien claimant." But, given the directive in § 57407, the court will look to Division 9 for guidance as to the meaning of the term "signed."

As noted above, cases decided before changes were made to Division 9 indicate that a hand-written signature was not required on financing statements under § 9402(1) of the Commercial Code. The current version of the Commercial Code takes the principle further. It requires only an "authentication" of various records such as a financing statement, and the act of "authentication" is defined to include not just "to sign" a document, but also "to execute or otherwise adopt a symbol . . . with the present intent of the authenticating person to identify the person and adopt or accept a record." Cal. Comm. Code § 9102(a)(7)(A), (B).[2] It is thus clear that the Statements would satisfy the "authentication" requirement under the current Division Nine, further supporting the Defendant's contention that the Statements are not materially defective due to the use of the Defendant's typewritten name

///

---

2. Further, under the general definitions provided in § 1201 of the Commercial Code, "signed" is defined expansively "[to] include[] using any symbol executed or adopted with the present intention to adopt or accept a writing." Cal. Comm. Code § 1201(38) (West 2006).

rather than the hand-signed name of the Defendant's representative.

The Trustee also argues that a hand-written signature should be required under the Lien Law, which provides for a statutory rather than consensual lien as under Division Nine, in order to reduce the risk of fraud. The court is not convinced that such a requirement would significantly reduce such risk, and, in any event, the court is not to look to general policy reasons for an interpretation of the statute where the plain language is clear.

For the reasons stated above and based on the facts in this case, the court concludes that the Diary Lien in favor of the Defendant was perfected as of the date the Debtors filed their bankruptcy petition. This insulates the Defendant's Dairy Lien from attack by the Trustee under 11 U.S.C. § 544(a) and 11 U.S.C. § 545(2).

### III. CONCLUSION

For the reasons set forth above, the court concludes that the typewritten signatures on the Statements were sufficient to satisfy § 57405(d)(2) of the Food and Agricultural Code, and that the Defendant's claimed Diary Lien was perfected as of the date the Debtors filed their chapter 7 petition. Accordingly, the relief requested by the Trustee is not available, and the court will enter judgment in favor of the Defendant.

Dated: February 9, 2007

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

**CERTIFICATE OF MAILING**

I, Andrea Lovgren, in the performance of my duties as assistant to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

<u>Attorney for Plaintiff</u>

Carl Collins
P.O. Box 3291
Modesto, CA 95353

<u>Attorney for Defendant</u>

Eric Nielsen
P.O. Box 3030
Modesto, CA 95350

Frederick Smith, Jr.
P.O. Box 11690
Oakdale, CA 95361

DATE: February 9, 2007

_____
Andrea Lovgren